## Commonwealth v. Dittler

*David J. Brightbill,* Assistant District Attorney, for Commonwealth.

*Thomas A. Ehrgood,* of *Ehrgood & Ehrgood,* for defendant.

GATES, P. J., July 25, 1972.—We have before us the narrow issue of whether a defendant who has pleaded guilty to reckless driving may thereafter be indicted and tried for the misdemeanor charge of involuntary manslaughter arising out of the same set of facts.

Procedurally, the matter is before us on defendant's pretrial application to quash the indictment.

Factually, there is no dispute. On March 15, 1971, defendant was operating a motor vehicle in East Hanover Township, Lebanon County, Pa. At that time, he allegedly drove into the rear of a vehicle driven by Catherine M. Rager, subsequently causing her death.

The Pennsylvania State Police arrived on the accident scene at 11:55 p. m. Mrs. Rager was transported to a nearby hospital and, at approximately 12:35 a. m.

on March 16th, just five minutes after her arrival, she was pronounced dead. There was evidence that Mrs. Rager was alive when she was taken from the site of the crash.

Meanwhile, defendant had been taken before a district magistrate and charged with reckless driving under the summary provisions of The Vehicle Code. He pleaded guilty and paid $15 fine and costs. Before the proceedings began, one of the troopers contacted the hospital and was told that Mrs. Rager was alive. He again called after the plea had been entered and was then informed that she had expired. The plea was accepted at 1:10 or 1:15 a. m. on March 16th.

Defendant asserts the principle of double jeopardy or, more particularly, autrefois convict as the basis for his defense.

The principle of former jeopardy as set out in the Constitution of Pennsylvania, article I, sec. 10, has been held applicable only where one is twice exposed to a lawful conviction for a capital crime: Commonwealth ex rel. Papy v. Maroney, 417 Pa. 368, 207 A. 2d 814 (1965). However, with the advent of Benton v. Maryland, 395 U.S. 319, the accused now is cloaked with the Fifth Amendment guarantee of the United States Constitution against double jeopardy in capital as well as noncapital offenses by virtue of selective incorporation through the Fourteenth Amendment. Thus, if defendant is exposed to conviction and punishment, he is in jeopardy in the constitutional sense: People v. Wilson, 6 Mich. App. 474, 149 N.W. 2d 468 (1967). An order placing a defendant on probation constitutes "punishment" in the constitutional context: Commonwealth v. Vivian, 426 Pa. 192, 200, 231 A. 2d 301 (1967). Although a plea of autrefois acquit or convict in Pennsylvania law is separate and distinct from former jeopardy, under the Federal Constitution,

in all practicality they are identical: Commonwealth ex rel. Papy v. Maroney, supra, page 370, 10 P. L. Encyc., Criminal Law, §151.

A reading of the cases developing the principles of former jeopardy and autrefois convict indicates three broad general rules to be used as guides in the determination of whether a second prosecution for the same offense is prohibited.

First, if two offenses grow out of the same act or transaction, and such offenses are severable and distinct, and one is not included in the other, a prosecution for one will not bar a prosecution for the other.

Our Supreme Court has quoted, with approval, from the rule stated in 22 C. J. S., Criminal Law, §283, pages 738-9:

"The rule that the doctrine of double jeopardy applies only where the two prosecutions are for the same crime must be taken with this qualification, that where one crime is included in, and forms a necessary part of, another, or is but a different degree of the same offense, and where on a prosecution, or under an indictment, for the higher crime, or greater offense, a conviction may be had for the lower, then a conviction or an acquittal of the higher will bar a prosecution for the lower, or for any crime of which the lower is an essential ingredient or element. . .": Commonwealth ex rel. Moszczynski v. Ashe, 343 Pa. 102, 21 A. 2d 920 (1940); 10 P. L. Encyc., Criminal Law, §161.

The reverse is certainly also true; where one is convicted or acquitted of a crime which is a constituent of a greater crime, he may not thereafter be prosecuted for the greater crime: Commonwealth ex rel. Papy v. Maroney, supra; Commonwealth v. Thatcher, 364 Pa. 326, 71 A. 2d 796 (1950); Commonwealth v. Pellett, 54 D. & C. 2d 370 (1972).

The harassing features of multiple prosecutions

are present in a summary offense as well as in an ordinance violation. The double jeopardy clause guarantees "that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity . . .": Green v. United States, 355 U.S. 184, 2 L. Ed. 2d 199, 204, 78 S. Ct. 221, 61 A.L.R. 2d 1119 (1957).

While it is admitted that the two prosecutions involved herein arose from an identical factual setting, we feel disposed to further consider the case in light of the other two general guides.

The second rule is that a subsequent prosecution based on the same act or transaction is barred if the two charges could have been tried in a court having jurisdiction to adjudicate both offenses. There are cases in other jurisdictions holding both ways on this point. Pennsylvania, however, follows the rule that a conviction of a minor offense in an inferior court does not bar a prosecution for a higher offense over which the inferior court had no jurisdiction. The rationale is that the lack of jurisdiction of the inferior court prevents jeopardy from attaching: Commonwealth v. Bergen, 134 Pa. Superior Ct. 62, 4 A. 2d 164 (1938); Commonwealth v. Rubin, 42 D. & C. 21 (1921); Commonwealth v. Pellett, supra. See also 21 Am. Jur. 2d, Criminal Law, § 185 and 4 A.L.R. 3d 874.

"While the decisions and authorities dealing with the pleas of former acquittal and former conviction almost universally relate to *indictable* offenses, we have, in this State, extended it by analogy to summary proceedings before a justice of the peace, alderman, or magistrate to the extent that an acquittal or conviction in such a proceeding will be a bar to a

conviction on a subsequent summary proceeding brought *before the same or another inferior magistrate for the same matter.* See Marsteller v. Marsteller, 132 Pa. 517, 19 A. 344 . . . But we have found no well considered cases where an acquittal in a *summary proceeding* before a district justice or other inferior magistrate was held to be a bar to an *indictment* for a felony or misdemeanor in the court of quarter sessions or oyer and terminer, where on the trial of such indictments the defendant could not be convicted of the offense heard before the justice, because it was not an indictable crime or misdemeanor; and where the justice or inferior magistrate had no jurisdiction to try the crime of which the defendant was afterwards indicted in the court of quarter sessions or oyer and terminer . . .": Commonwealth v. Bergen, supra, page 73. (Italics in original opinion.)

We are here involved in an original charge of reckless driving, which is a summary proceeding over which the inferior magistrates have exclusive original jurisdiction. The court of common pleas has only appellate jurisdiction in such matters since reckless driving is not an indictable offense. On the other hand, the subsequent charge of involuntary manslaughter is an indictable offense. In connection therewith, the district justices have only ministerial duties to perform, as they merely determine if a prima facie case has been made out, and, if so, return the record for further proceedings. The district justice has no authority to try an indictable offense. The law in Pennsylvania is clear. Defendant's conviction under The Vehicle Code of a summary offense would not constitute a bar to the present indictment for involuntary manslaughter.

A more difficult question is presented in considering the Federal standard in the wake of Benton v.

Maryland, supra, especially in light of the recent United States Supreme Court decisions in Waller v. Florida, 397 U.S. 387, 25 L. Ed. 2d 435, 90 S. Ct. 1184 (1970), and Ashe v. Swenson, Warden, 397 U.S. 436, 25 L. Ed. 2d 469, 90 S. Ct. 1189 (1970).

In Waller v. Florida, supra, defendant was charged and convicted in a municipal court. On the same set of facts, he was later convicted in a State court on a felony charge. The theory asserted against defendant's claim of double jeopardy was that the municipality and the State were separate sovereigns, each of which had been wronged, and each of which could seek redress. Mr. Chief Justice Burger, speaking for the majority, found the dual sovereignty concept an anachronism but limited his holding to a finding, ". . . that the Florida courts were in error to the extent of holding that—'even if a person has been tried in a municipal court for the identical offense with which he is charged in a state court, this would not be a bar to the prosecution of such person in the proper state court' ": Waller v. Florida, supra, page 395. A reading of Waller fails to indicate whether Florida law made a distinction between the two offenses charged similar to that made under the Pennsylvania law between summary offenses and indictable crimes: Commonwealth v. Pellett, supra, page 378. Inasmuch as the holding in Waller was narrowly delineated, the precise question presented for our consideration remains open to debate as to whether the Pennsylvania rule measures up to the Federal standard.

The concurring opinions of Mr. Justice Brennan in Waller and in Ashe v. Swenson do shed a bit of light on our quandary. As he points out in Ashe, 397 U.S. 453-454, 90 S. Ct. at page 1199, 25 L. Ed. 2d at page 469, ". . . the fundamental inducement behind the double jeopardy clause is a joinder at one trial of all the

possible charges that flow from a 'single criminal act, occurrence, episode or transaction.' Here, such joinder would not have been possible. . . ." The manslaughter charge here could not have been tried before the district justice, nor could the reckless driving charge be brought in the court of common pleas. As was said in Commonwealth v. Bateman, 51 D. & C. 2d 754, 760, (1971):

"It appears, therefore, that there is no Federal constitutional prohibition against the instant prosecution, and it is clear that practical considerations support the logic of the decision. It would be an anomaly indeed if an individual could escape prosecution for a misdemeanor or a felony simply because he had been charged, pled guilty and paid a fine before a justice of the peace for a summary offense involved in his act."

With this, we fully concur. It is our conclusion that this point alone would permit the manslaughter prosecution. When the case is further considered in light of the third guide, our conclusion is only strengthened.

The third rule is that if the prosecutor knew, or reasonably should have known, of the facts relevant to the second charge at the time of the original prosecution, a subsequent prosecution for the same offense is prohibited. This, we believe, is what Mr. Justice Brennan was referring to in his concurring opinion in Ashe v. Swenson, supra, when he said: "In my view, the Double-Jeopardy Clause requires the prosecution, except in most limited circumstances, to join at one trial all the charges against a defendant that grow out of a single criminal act, occurrence, episode, or transaction . . ." In an explanatory note, he added: "For example, where a crime is not completed or not discovered, despite diligence on the part of the police, until after the commencement of a prosecution for

other crimes arising from the same transaction, an exception to the 'same transaction' rule should be made to permit a separate prosecution . . .", citing Diaz v. United States, 223 U.S. 422, 448-49, 56 L. Ed. 500, 503, 32 S. Ct. 250 (1912); cf. A.L.I., Model Penal Code, proposed official draft sections 1.07(2), 1.09(1)(b)1962. ". . . Another exception," he said, "would be necessary if no single court had jurisdiction of all of the alleged crimes. . . .": Ashe, supra, page 453, note 7.

In 21 Am. Jur. 2d, Criminal Law, §186, the rule is stated that where a new fact for which defendant is responsible intervenes after the first prosecution, and that new fact, plus those previously existing, constitute a new crime not susceptible of adjudication in the first prosecution, the determination of the first proceeding is not a bar to a prosecution for the newly developed crime. The example given to illustrate the point is that an acquittal of a charge of assault will not bar a subsequent charge of murder where the victim of the assault dies after the first trial. Citing Wyatt v. Municipal Court of Los Angeles Judicial District, 242 Cal. App. 2d 845, 51 Cal. Rep. Rptr. 862 (1966) (prosecution for misdemeanor violation of The Vehicle Code which results in death will not bar later prosecution for manslaughter); State v. Poland, 255 La. 746, 232 So. 2d 499 (1970). Also citing Carmody v. Seventh Judicial District Court, 81 Nev. 83, 398 P. 2d 706, 11 A.L.R. 3d 828 (1965) (double jeopardy not a defense to murder prosecution where death of victim of robbery occurred after robbery conviction).

In Pennsylvania, the case of Commonwealth ex rel. Papy v. Maroney, supra, falls into this line of reasoning. Therein, defendant was indicted and convicted of aggravated assault and robbery. Several months after the conviction, the victim died. Papy was then indicted

for murder. In upholding the conviction, the Pennsylvania Superior Court ruled that at the time of the first conviction defendant could not have been prosecuted for murder, since no such crime had yet been committed.

The facts of this case seem to take us one step beyond Papy, in a valid extension of the reasoning employed in that decision. Though Mrs. Rager had, in fact, died some 45 minutes before the guilty plea was entered, the State policeman neither knew nor reasonably should have known of that occurrence. Before the proceedings began, Trooper Dillon contacted the emergency ward of the hospital in which Mrs. Rager was being treated, and he was informed that she was not dead. He was advised to call again, which he did approximately 30 minutes later. Unfortunately, the plea had already been entered when the second call resulted in a confirmation of death.

We admit great vexation with this facet of the case. We do not believe that the fortuitous circumstance of Mrs. Rager's death less than an hour before the guilty plea should bar the subsequent manslaughter prosecution. Had this occurred but one minute after the plea, there would be no problem either under Pennsylvania law or under the Federal decisions. With the facts of this case, we are unable to place the dividing line between the time of the plea and an instant thereafter as a criterion as to whether second prosecution is barred. In this situation, a mechanical test is futile. Rather, we prefer to borrow the tort concept of "knew or reasonably should have known" in an attempt to reach a more equitable solution to a difficult problem.

We hold that even though the two charges arose out of the same act or transaction, a second prosecution is not barred, since both charges could not have been

tried in a court having jurisdiction to adjudicate both offenses, and the prosecutor neither knew, nor reasonably should have known, of the fact relevant to the second charge at the time of the original prosecution.

### ORDER

And now, to wit, July 25, 1972, defendant's motion to quash the indictment is refused.